Hume Bank, Defendant in Error, v. C. W. Hartsock, Plaintiff in Error.

Kansas City Court of Appeals, January 8 and 29, 1894.

1. **Chattel Mortgages:** RECORD OF: SEPARATE SERIES OF BOOKS: STATUTE. The statute relating to the recording of instruments in the recorder's office, requires that chattel mortgages should be recorded in a separate series of books, distinct from the series in which conveyances relating to real estate are to be recorded, but it is *held*, that the recording of chattel mortgages in separate volumes of the numerical series kept in the office for all purposes, in which volume only conveyances relating to personal property were recorded, as was indicated on the back of such volume, is a substantial, though not a technical, compliance with the statute.

2. ———: REPLEVIN: VALUE OF PROPERTY: EVIDENCE. In an action of replevin where the plaintiff claims under a chattel mortgage, the statute does not provide at what time the value of the property shall be assessed; and if the sale took place within a reasonable time after the commencement of the suit, on due notice, and was fairly conducted without fraud, the price the property brought at the sale is the value to be found by the jury as between the parties for the purposes of that suit; and previous declarations of persons as to what they would give are not pertinent to issue.

3. ———: SALE: FRAUD: PAYMENT OF PRICE. The arrangement by which the purchaser at the sale under the mortgage does not pay all his bid, but secures the unpaid part, is not, in this case, fraudulent.

4. **Appellate Practice:** REMITTITUR. A remittitur is ordered in this case as a condition to the affirmance of the judgment with costs.

*Appeal from Bates Circuit Court.*—Hon. James H. Lay, Judge.

Affirmed on condition.

*Thos. J. Smith* for plaintiff in error.

(1) The mortgage pleaded in first count of plaintiff's petition was not recorded as required by law,

being recorded in a book belonging to a series used for recording conveyances of real estate.    Revised Statutes, 1889, sec. 7432; *Jennings v. Sparkman*, 39 Mo. App. 663; *Parsons v. Lent*, 34 N. J. Eq., 67; *Ins. Co. v. White*, 17 N. Y. 469; *Ins. Co. v. Doke*, 87 N. Y., 263; *Sawyer v. Adams*, 8 Vt. 172, s. c., 30 Am. Dec. 459, see note 463; *Bishop v. Schneider*, 46 Mo. 472; *Ferrell v. Andrew Co.*, 44 Mo. 309; *Anthony v. Butler*, 13 Pet. 425.    (2) The action of the court in excluding evidence of Dr. Standish as to offer made him for the cattle just prior to time of the sale, was erroneous.    *Stevens v. Springer*, 25 Mo. App., 375; *Keiser v. Gamen*, 95 Mo. (3) The exclusion of the evidence offered by defendant on cross-examination of J. S. Franklin, as to the fraudulent agreement for the sale of the cattle, was error. By intentional fraud one may forfeit a right of action, which, but for the fraud, could be enforced against the world.    *Smith v. Ham*, 51 Mo. App., 433.    (4) The instruction given by the court of its own motion is erroneous.    It is indefinite as to the time at which the jury were directed to find the value of the cattle, the value of which is shown by the evidence to have been fluctuating.

*Francisco Bros.* for defendant in error.

SMITH, P. J.—The plaintiff, an incorporated bank, brought an action of replevin against the defendant, who was sheriff of the county, to recover the possession of one hundred steers which the plaintiff bank claimed to be entitled to under the provisions of a chattel mortgage executed by Coe and Franklin to it, and which had been subsequently seized by the defendant sheriff, under a writ of attachment against the mortgagors. The plaintiff had judgment and defendant, has appealed.

At the trial the plaintiff offered in evidence the

chattel mortgage already referred to, to the introduction of which the defendant objected, on the ground that "it was not recorded in a series of books set aside for the recording of chattel mortgages or conveyances other than the conveyances of real estate," which objections being overruled by the court, the defendant excepted. The action of the trial court in this regard constitutes the main ground of defendant's appeal.

It appears from the evidence that, from about the year 1887 there had been kept in the office of the recorder of deeds for Bates county but one series of record books from serial number 89, in which books all deeds and other instruments affecting the title to real estate and all instruments of writing conveying chattels or personal property alone, were recorded, though each class of such instruments were recorded in separate books in the series, on the back of which the contents was indicated. Every book in the series showed on its back the kind or class of instruments which were therein recorded. The plaintiff's chattel mortgage was recorded in one of the chattel mortgage books of the series in which no conveyances of real estate were recorded. There was nothing else recorded in the book. It is objected by defendant that this was no recording at all of the plaintiff's mortgage or, at least, that it was not recorded in the manner required by the statute, and that, therefore, it imparted no notice and so was invalid as to defendant.

Section 5176, Revised Statutes, provides, that a mortgage of personal property shall not be valid against any other person than the parties thereto, unless recorded in such manner as conveyances of land are by law directed to be recorded. Section 7432 provides, that instruments in writing conveying chattels or personal property alone, which, by law of this state are required to be recorded, shall be recorded in a series of

volumes separate from those used for recording convey-
ances of real estate.   As has already been stated there
was not kept in the recorder's office a series of volumes
for the recording of the instruments mentioned in the
section of the statute just referred to, separate from
those of the series used for recording conveyances of
real estate.   The question, then, is, whether recording
these two classes of instruments in separate books of
the same series is such a departure from the require-
ments of the statute as to render chattel mortgages so
recorded inefficacious.

The recording statute, as first enacted—section
3813, Revised Statutes, 1879—divided the instruments
of writing which it was the duty of the recorder to
record into five classes and in the first of which was
included instruments concerning real estate and goods
and chattels.   Revised Statutes, 1855, section 10, p.
1313; General Statutes, 1865, section 9, p. 159.   The
succeeding section, 3814, required that the several
classes] of instruments of writing mentioned in the
several subdivisions of section 3813 should be recorded in
separate books according to the classification therein.
In 1874 (Session Acts, 1874, p. 31) the legislature by
an act which has been incorporated in the two last
revisions of the statute, Revised Statutes, 1889, section
7432, subdivided the first class of the instruments
mentioned in section 3813, Revised Statutes, 1879—
now section 7430—by declaring that those instruments
concerning goods and chattels should be recorded in a
series of volumes separate from those used for record-
ing conveyances of real estate.   Now, looking at
sections 7430, 7431 and 7432 as they stand related in
the statute, it would seem that the object the legis-
lature had in view by their enactment was, to require
that each class of such instruments as is therein men-
tioned should be recorded in separate books, and to

impliedly forbid the promiscuous recording of such instruments in one or more books. The language of these several sections plainly shows, as we think, that the paramount object of the legislature was, to require that separate books should be used to record each class of the instruments therein mentioned. And while section 7432 requires that the class of instruments concerning personal property shall be recorded in a series of books separate from those used for recording conveyances of real property, we think that if the several classes of such instruments are recorded in separate books kept for that purpose, as was shown to have been done in the case at bar, this is a substantial, though not a technical, compliance with the statutory requirement.

In opposition to this view, we are cited to *Jennings v. Sparkman* (39 Mo. App. 663), but an examination of that case will show that the question there was different from the one here. One of the questions there was, whether a deed of trust conveying both real and personal property should be recorded in one of the series of volumes of books that were kept separate from those used for recording conveyances of real estate as well as in the latter, and thus be twice recorded. It was, as we think, correctly ruled that the recording of the instrument in a book used for the conveyance of real estate satisfied the statute. It is, therefore, obvious that the question for decision here did not arise in that case.

We have given an attentive and careful consideration to the other cases cited in support of the first paragraph of the defendant's brief, but do not find that either of them uphold his construction of the recording statutes. In this case the plaintiff's mortgage was recorded in such a manner as was in substantial compliance with the provisions of the statute, and was sufficient to affect strangers to such mortgage with

notice so far as such statutory provisions are intended to direct inquirers in their search and examination for incumbrances; or, as was said in *Lieby v. Wolf* (10 Ohio, 84), whenever the state of the title on record would lead a searcher of incumbrances, who was using common prudence and care in investigating the title, to the knowledge of the fact, the law assumes that he acquired knowledge of it. Upon the facts of this case which are undisputed, we are unwilling to declare that the plaintiff's mortgage was not recorded so as to meet the substantial requirements of the statute, and for that reason invalid as to the defendant.

The court, on its own motion, instructed the jury that the plaintiff, under the pleadings and evidence, was entitled to recover on the first count in the petition but not under the second and that they should find from the evidence as follows: *First*. The value of the property in suit. *Second*. The amount due the plaintiff on the notes described in the first count, principal and interest to date of sale of the cattle, less any payment thereon which you may believe from the evidence was made thereon, not made out of the proceeds of the sale of the cattle. *Third*. The expenses which plaintiff may have incurred in the keeping and sale of the cattle after they were replevied in this suit. The defendant asked, and the court refused, an instruction telling the jury that they should find and say in their verdict what was the value of the cattle at the time the suit was brought.

It does not affirmatively appear from the record before us at what time the suit was brought. It appears the cattle were sold under the mortgage in October, 1891, which, we infer from other facts shown in the evidence, was a very short time after the commencement of the suit. Nor does it appear that there was any difference in the value of the cattle between these

two dates, whatever they were. At the mortgagee's sale the cattle sold for $2,100. The jury found their value to be $2,200, but this did not injure the defendant as he was entitled to the excess thereof above the amount of the plaintiff's debt and damages.

Now, it is true the court's instruction did not direct the jury at what time they should find the value of the cattle, but as their finding was as much or more than the evidence at any time warranted, we cannot discover that the defendant was injured by the supposed omission in the court's instruction. The statute does not provide, in a case of this kind, at what time the value of the property shall be assessed. We take it that if the plaintiff mortgagee was entitled to the possession of the cattle at the time they were taken from the defendant and that it then had a right, under the provisions of the mortgage, to sell the same to satisfy its debt, as appears from the evidence was the fact, and that the plaintiff, as soon as was practicable after it regained possession, proceeded to advertise and sell the same, that the price which the cattle brought, provided the sale was a fair one and on due notice, which is not controverted, was the value of the cattle to be found by the jury as between the parties for the purpose, of this suit.

We are unable to discover that the previous declarations of persons as to what they would give for the cattle or as to their previous value were pertinent to the issues.

This case is not in any respect analogous to the case of *Bullene v. Barrett*, 87 Mo. 185, or to the other cases cited by defendant. It is true that the purchaser of the cattle only paid the plaintiff bank, directly, the sum of $1,700 of the $2,100, but, by an arrangement with Mrs. Franklin, wife of one of the mortgagors, the purchaser released her land from a mortgage which he

held on it and thus enabled her and her husband to secure with the land that amount to the plaintiff bank, so that it resulted that the purchaser paid the price bid for the cattle to the plaintiff bank. There is nothing in this circumstance which in any way tends to render the mortgage fraudulent under the statute.

It is further insisted, that the finding by the jury of the interest of the plaintiff bank in the cattle was excessive. The counsel of the plaintiff bank, in his brief, concedes that this is so, to the extent of $156.75, which amount he offers to remit. It appears the jury failed to allow, in their computation of the amount due on the mortgage notes, the credit of $100 which had been paid by the mortgagors. It does not appear at what time this amount was paid. The amount of interest should, we think, under such conditions, be allowed on the whole amount of the notes from their date, less $100, which would make the plaintiff's interest in the cattle amount to $1,830, instead of $1,998.95 as found by the jury.

Now if the plaintiff bank will, in ten days hence, enter a *remittitur* for $168.95, the judgment will be modified accordingly and affirmed, otherwise it will be reversed and remanded and in either event the defendant will be entitled to recover the cost of prosecuting his writ of error here. All concur.